## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

United States of America,                    Crim. No. 11-141(4) (RHK/JJK)

       Plaintiff,

v.
                                             **REPORT AND RECOMMENDATION**
4.  James Nathan Fry,

       Defendant.

---

John Docherty, Esq., and Timothy C. Rank, Esq., Assistant United States
Attorneys, counsel for Plaintiff.

Joseph S. Friedberg, Esq., Joseph S. Friedberg, Chartered; and Robert D.
Richman, Esq., counsel for Defendant Fry.

---

This matter is before the Court on Defendant James Nathan Fry's Second

Motion to Dismiss Counts 25–27 (Doc. No. 82), and was referred to the

undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and

D. Minn. Loc. R. 72.1.  This Court held a hearing on the motion on February 2,

2012.  For the reasons stated below, this Court recommends that Defendant's

motion be granted.

### BACKGROUND

The charges in this case arise out of the alleged false statements,

misrepresentations, and omissions made by the Defendants to their investors in

connection with their funds' investments in Petters Company Inc. ("PCI").  In a

Superseding Indictment filed on July 19, 2011, Co-Defendants Vennes and Fry

were indicted on five counts of aiding and abetting one another in committing

securities fraud in violation of 15 U.S.C. §§ 77q(a) and 77(x), and four counts of

wire fraud in violation of 18 U.S.C. §§ 1343 and 2. (Doc. No. 37.)  In Counts 25,

26, and 27 of the Superseding Indictment, the Government also charges

Defendant Fry with making false statements in violation of 18 U.S.C.

§ 1001(a)(2).  (*Id.*)

On September 1, 2011, Defendant Fry moved to dismiss Counts 25–27 of

the Superseding Indictment on the ground that they fail to identify the specific

"material false statement[s] and representation[s]" he is alleged to have made on

October 25, October 26, and November 5, 2010, in testimony before the

Securities and Exchange Commission ("SEC").[1]  (Doc. No. 49.)  The Government

agreed that Defendant Fry was entitled to a bill of particulars with respect to

these counts.  (Doc. No. 57, United States' Resp. to Defs.' Pretrial Mots. 11.)

Based on that agreement, the undersigned granted Defendant Fry's motion with

respect to his request for a bill of particulars, but denied the motion with respect

to his request to dismiss the counts.  (Doc. No. 63, 9/27/11 Order at 2–3.)  On

October 21, 2011, the Government filed its Bill of Particulars as to Counts 25–27.

(Doc. No. 71.)

---

[1]      Each count corresponds to one of the three days Defendant Fry testified
before the SEC.

In the Bill of Particulars, the Government describes, citing (but not directly quoting) the SEC transcript by page and line, the false statements alleged in connection with Count 25–27.  With respect to Count 25, the Government identifies the following:

> [1] FRY testified that he did not know about or approve LXXX RXXXXXX's cold calling of potential investors[; and]
>
> [2] FRY testified that the ACF and ACPII pitch books were never approved for distribution, that he had numerous conversations with LXXX RXXXXXX during which he informed her that the ACF and ACPII pitch books were inaccurate, that the pitch books were never distributed "wholesale," and that he quickly stopped LXXX RXXXXXX from distributing them.

(Doc. No. 71, Bill of Particulars 1–2.)  With respect to Count 26, the Government identifies:

> [1] FRY testified that he believed that retailers paid the custodian bank directly until September 24, 2008[;]
>
> [2] FRY later testified that he believed that retailers paid the custodian bank directly until he learned about the clearing account, but he was told by FRANK VENNES that the clearing account was controlled by M&I Bank not Petters[;]
>
> [3] FRY testified that Frank Vennes was no longer involved with ACM CORP's Petters notes by 2001 – he had nothing to do with the transactions, was no longer the "go-between," and had no authority[;]
>
> [4] FRY testified that he was not aware that retailers made payment to a Petters bank account instead of the funds' collateral accounts[; and]
>
> [5] FRY testified that he was not aware that LXXX RXXXXXX distributed pitch books to potential investors.

(*Id.* at 2–3.)  And with respect to Count 27, the Government identifies:

3

[1] FRY testified that he was never aware that Petters Company Inc., not the retailers, wired money into ACP II's collateral account[;]

[2] FRY testified that neither LXXXXXXX SXXXXXX nor MXXXXXXXX PXXX ever informed him that Petters Company Inc. was wiring money into the funds' collateral accounts[; and]

[3] FRY testified that he was never aware that Petters Company Inc. wired money in payment of EF Petters notes.

(*Id.* at 3–4.)

On December 16, 2011, Defendant Fry filed a Second Motion to Dismiss Counts 25–27 (Doc. No. 82), which is the motion pending before the Court.

## DISCUSSION

Defendant Fry moves for dismissal of Counts 25, 26, and 27 of the Superseding Indictment, as supplemented by the Bill of Particulars, as duplicitous. Duplicity is the joining in a single count of two or more distinct and separate offenses. *United States v. Street*, 66 F.3d 969, 974 (8th Cir. 1995). "The principal vice of a duplicitous indictment is that the jury may convict a defendant without unanimous agreement on the defendant's guilt with respect to a particular offense." *United States v. Karam*, 37 F.3d 1280, 1286 (8th Cir. 1994). The test for determining whether separate statements in a single false statement count constitute a single offense turns on whether each alleged false statement in a given count requires "different factual proof of their falsehood." *United States v. Graham*, 60 F.3d 463, 467 (8th Cir. 1995); *see also United States v. Feldhacker*, 849 F.2d 293, 297 (8th Cir. 1988) ("It is clear that the prosecution may not multiply charges of perjury by repeatedly rephrasing the

4

same question . . . . However, it is equally clear that separate false statements may be charged in separate perjury counts if they require different factual proofs of their falsehood, notwithstanding their relationship to a common nexus of fact." (citations omitted)).  "[R]epetition of a false statement which does not constitute an additional impairment of . . . government functions . . . should not be charged separately in an indictment."  *Graham*, 60 F.3d at 467 (quotations and citation omitted).

The Government contends that all the alleged false statements referenced in its Bill of Particulars as to Count 25 relate to one falsehood, namely that whatever misstatements and omissions there were in marketing to investors was LXXX RXXXXXX's fault.  The Government asserts that the falsity of Defendant Fry's version of events can be asserted in one count.  This Court concludes that while the statements alleged in Count 25 may all relate broadly to one particular subject matter (i.e., LXXX RXXXXXX's involvement), the statements themselves relate to separate and distinct falsehoods.  At a minimum, different evidence will be needed to prove that the statement relating to cold calls is false than that which will be needed to prove that the statements relating to pitch books are false.   Further, it is likely that different evidence will be needed to prove the various statements about pitch books are false.  For example, it is likely that the evidence used to show that the ACF and ACP II pitch books were approved for distribution will be different from the evidence used to show that Defendant Fry did not quickly stop LXXX RXXXXXX from distributing the ACF and ACP II pitch

5

books, and which will also likely be different from the evidence used to show that

the ACF and ACPII pitch books were never distributed wholesale. These alleged

false statements constitute different alleged falsehoods, not the same falsehood.

*Cf. United States v. Fernandez*, 389 Fed. Appx. 194, 199 (3d Cir. 2010) (stating

that "courts have held that perjury indictments are not duplicitous simply because

they specify multiple statements demonstrating the same falsehood").  Including

these statements in one count constitutes duplicity, and raises the danger that

the jury may convict on this count without agreeing unanimously that a particular

statement was false.  For example, six jurors could find that Defendant Fry did

know about LXXX RXXXXXX's cold calling of potential investors, while six other

jurors could find that the pitch books were approved for distribution.  In such a

situation, both findings would indicate that Defendant Fry's statements might

have been false, but neither statement would have been found to be false by all

jurors.  Therefore, this Court concludes that because Count 25 is based on

various alleged false statements that contain different falsehoods and that would

require different factual proof of falsehood, the count should be dismissed as

duplicitous.

    With respect to Count 26, the Government contends that the alleged false

statements referenced in its Bill of Particulars all relate to the "flow of funds" of

the Arrowhead investments, and therefore they can be pleaded in one count.

Although the same evidence can be used to prove the statements that Defendant

Fry "believed that retailers paid the custodian bank directly until September 24,

2008," that he "believed that retailers paid the custodian bank directly until he
learned about the clearing account," and that he was "not aware that retailers
made payment to a Petters bank account instead of the funds' collateral
accounts," were false, this evidence would be different from the evidence
required to show the falsity in the other statements alleged in Count 26.  Whether
Defendant Fry "was told by [Vennes] that the clearing account was controlled by
M&I Bank not Petters," whether "Vennes was no longer involved with ACM
CORP's Petters notes by 2001," "had nothing to do with the transactions, was no
longer the 'go-between,' and had no authority," or whether Defendant Fry was
"aware that LXXX RXXXXXX distributed pitch books to potential investors," all
require different evidence to prove their falsity.  Accordingly, Count 26 should
also be dismissed as duplicitous.

In Count 27, the Government alleges that Defendant Fry made false
statements that "he was never aware that Petters Company Inc., not the retailers,
wired money into ACP II's collateral account," that "neither LXXXXXXX
SXXXXXX nor MXXXXXXXX PXXX ever informed him that Petters Company Inc.
was wiring money into the funds' collateral accounts," and that "he was never
aware that Petters Company Inc. wired money in payment of EF Petters notes."
(Doc. No. 71, Bill of Particulars 3–4.)  This Court concludes that these three
statements were different ways of articulating the same falsehood, and the same
evidence will be required to show the truth or falsehood of the statements.
Therefore, Count 27 is not duplicitous.  However, Count 27 does have a

multiplicity problem.  "'Multiplicity' is the charging of a single offense in several counts." *Gerberding v. United States*, 471 F.2d 55, 58 (8th Cir. 1972).  The three statements referenced by the Government that were made on November 5, 2010,  are merely different ways of articulating the same falsehood that was made in statements on October 26, 2010, that Defendant Fry believed that retailers paid the custodian bank directly.  The fact that the November 5, 2010 statements were made on a different date than the other statement does not justify a separate count.  The statements were all made to the same body (i.e., the SEC), and the repetition of the latter statements added no further harm to the Government.  *See Graham*, 60 F.3d at 467.  Therefore, Count 27 is impermissibly multiplicitous of statements alleged in Count 26 and should be dismissed.

Defendant Fry alternatively argues that Count 26 should be dismissed because the statements on which the count is based were true statements or were the product of fundamentally ambiguous questioning.  Defendant Fry also argues generally that Counts 25–27 fail to give adequate notice of the charges against which Defendant Fry must defend.  Further, at the hearing defense counsel questioned what the grand jury actually determined and which counts the grand jury actually supported.

Because this Court concludes that Counts 25, 26, and 27 should be dismissed as explained above, it need not address Defendant Fry's alternative bases for dismissal of those counts.  However, this Court notes that to the extent

Defendant is challenging the evidentiary basis for the allegations underlying Counts 25, 26, and 27 of the Superseding Indictment, "[i]t has long been settled that an indictment is not open to challenge on the ground that there was inadequate or insufficient evidence before the grand jury." *United States v. Nelson*, 165 F.3d 1180, 1182 (8th Cir. 1999) (citing *Costello v. United States*, 350 U.S. 359, 363–64 (1956) and *United States v. Cady*, 567 F.2d 771, 776 (8th Cir. 1977)).  Further, Rule 7(c)(1) of the Federal Rules of Criminal Procedure requires that an indictment be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1).  "An indictment is sufficient 'if it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to subsequent prosecution.'" *United States v. Summers*, 137 F.3d 597, 601 (8th Cir.1998) (quoting *United States v. Wessels*, 12 F.3d 746, 750 (8th Cir. 1993), *cert. denied*, 513 U.S. 831 (1994)).  Here, Counts 25, 26, and 27, as supplemented by the Bill of Particulars, adequately sets forth the elements of the offense charged and the statute asserted to be violated, and identifies the testimony that the Government is basing its charges on by page reference to the SEC transcript and by paraphrasing the testimony. Further, the Superseding Indictment itself further explains its charges against Defendant Fry at paragraphs 17–22, and paragraphs 31–33.  This is sufficient

information for Defendant Fry to understand the nature of the charges and to prepare his defense.

Defendant Fry's argument that Count 26 should be dismissed because his statements were true should also be rejected.  Although Defendant Fry's defense may be that the statements are true, the Government should not be precluded from presenting evidence showing that the statements made by Defendant Fry were in fact not true.  In other words, just because Defendant Fry contends that his statements were true because they were based on his true belief or were what Defendant Fry claims was "supposed" to happen, this does not mean that the Government cannot show that, based on the evidence, these were not Defendant Fry's true beliefs and that it was not in fact what was "supposed" to happen.  Determining whether Defendant Fry's answers to the questions presented were literally true when made, when taken in context, raises a factual question to be resolved by the jury.  *See United States v. Lighte*, 782 F.2d 367, 372–73 (2d Cir. 1986).

Further, this Court has reviewed the pertinent questioning before the SEC, and it does not find that the questioning was fundamentally vague or ambiguous. *See United States v. Robbins*, 997 F.2d 390, 395 (8th Cir. 1993) (stating "[a]bsent fundamental ambiguity or imprecis[ion] in the questioning, the meaning and truthfulness of a declarant's answer is for the jury"); *see also United States v. Hirsch*, 360 F.3d 860, 863 (8th Cir. 2004) (concluding that the motion to dismiss "amounted to no more than a request for the court to determine his guilt or

10

innocence based on factual elements of the offense which were within the purview of the jury to decide at trial").  "A question is fundamentally ambiguous when it is not a phrase with a meaning about which men of ordinary intellect could agree, nor one which could be used with mutual understanding by a questioner and answerer unless it were defined at the time it were sought and offered as testimony."  *United States v. Farmer*, 137 F.3d 1265, 1269 (10th Cir. 1998) (quotations omitted).  "The fact that questions could have been more specific is not evidence of fundamental ambiguity[.]"  *Fernandez*, 389 Fed. Appx. at 198.  Based on the record before this Court, there is no reason to believe that Defendant Fry did not understand the questions that were asked of him.  *See United States v. Ryan*, 828 F.2d 1010, 1015 (3d Cir. 1987) (stating that a question will be deemed fundamentally ambiguous "when it is entirely unreasonable to expect that the defendant understood the question posed to him"), *abrogated on other grounds by United States v. Wells*, 519 U.S. 482 n.3 (1997).  "Fundamental ambiguity is the exception, not the rule."  *Farmer*, 137 F.3d at 1269.  So even if the questioning considered in its proper context was "arguably ambiguous," that would involve an attack on the sufficiency of the evidence, *Farmer*, 137 F.3d at 1269, and in such a situation, "the meaning and truthfulness of a declarant's answer is for the jury to decide."  *Robbins*, 997 F.2d at 395; *see also United States v. Williams*, 552 F.2d 226, 229 (8th Cir. 1977) (stating that "[t]he intended meaning of a question and answer are matters for the jury to decide").

Nonetheless, based on this Court's conclusion that Counts 25, 26, and 27 are duplicitous and multiplicitous as explained above, this Court recommends that Defendant's Second Motion to Dismiss Counts 25–27 be granted. If the Government should choose to file a Second Superseding Indictment in this case to cure the deficiencies, it should take care in drafting its counts to not only avoid the duplicitous and multiplicitous problems that this Court has concluded are in the Superseding Indictment, but should be mindful that "[a] charge of perjury may not be sustained by the device of lifting a statement of the accused out of its immediate context and thus giving it a meaning wholly different than that which its context clearly shows." *Fotie v. United States*, 137 F.2d 831, 842 (8th Cir. 1943). And to avoid any future challenges, the Government may find it in its interest to fully cite the questions and answers that it is basing its charge on, and be clear about which specific statements Defendant Fry made that were false and why. *See United States v. Tonelli*, 577 F.2d 194, 198 (3d Cir. 1978) (concluding that the indictment was deficient because it failed "to specify in what particular the defendant's reply was false"); *see also id.* at 195 ("[T]he indictment must set out the allegedly perjurious statements and the objective truth in stark contrast so that the claim of falsity is clear to all who read the charge.").

## RECOMMENDATION

Based on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

    1.     Defendant James Nathan Fry's Second Motion to Dismiss Counts

25–27 (Doc. No. 82), be **GRANTED**.


Date:  February 13, 2012

                              *s/Jeffrey J. Keyes*
                              JEFFREY J. KEYES
                              United States Magistrate Judge


Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **February 27, 2012**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within **fourteen days** after service thereof.  All briefs filed under this rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions of the Report to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within **ten days** of receipt of the Report.